IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENDRA MICHELLE KUNKLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 21-850 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

ORDER

AND NOW, this 30th day of September 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 22) filed in the above-captioned matter on September 6, 2022,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 20) filed in the above-captioned matter on August 8, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED insofar as she seeks remand for further administrative proceedings. Accordingly, this matter is hereby remanded pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **Background**

Plaintiff applied for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq.*, and was found to be disabled on February 2, 2012. (R. 15, 120, 214).[1] Plaintiff had also protectively filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Act, 42 U.S.C. § 401, *et seq.*, at that time

---

[1] January 30, 2012 is also referenced in the record for a finding of Plaintiff's disability. (R. 120). The precise date in early 2012 when Plaintiff was initially found to be disabled is not relevant to the issues Plaintiff has raised before the Court.

and later (August 27, 2012) filed an application for child's insurance benefits. (R. 124). However, Plaintiff's application for DIB and child's insurance benefits were denied by an Administrative Law Judge ("ALJ") on August 15, 2013. (R. 124, 136).

Upon periodic review, the Social Security Administration ("SSA") determined Plaintiff's health had improved to the extent that she was no longer disabled as of August 2016. (R. 15—16, 214—15). She sought a hearing before an ALJ to challenge the cessation of benefits and received an unfavorable decision on April 22, 2019. (*Id.*). Plaintiff requested review of that decision before the Appeals Council and the matter was remanded on August 14, 2019. (*Id.*). The Appeals Council's order directed that, on remand, the ALJ ought to: obtain any necessary additional evidence such as consultative examinations, further evaluate Plaintiff's mental impairments, consider Plaintiff's residual functional capacity ("RFC") "in accordance with the regulations," gather supplemental evidence from the vocational expert ("VE"), and offer Plaintiff another hearing. (R. 15)

On remand, the ALJ held a hearing and "secured additional medical evidence" but did not order any consultative examinations because she "found doing so would not further develop the record" in a way that was necessary to her evaluation of Plaintiff's continued disability or cessation thereof. (R. 16). The ALJ determined that Plaintiff's "disability ended in August 2016" and that Plaintiff had "not become disabled again since that date." (*Id.*). That decision became the final administrative decision in this matter when the Appeals Council denied Plaintiff's request for review (R. 1). 20 C.F.R. § 416.1481. Plaintiff has challenged that decision, arguing that the ALJ erred as a matter of law and that her case should be remanded for further administrative proceedings.

## II. Standard of Review

The Court reviews final administrative determinations of disability for substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152—54 (2019). Its review of legal questions is plenary. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The evidentiary threshold for substantial evidence is "not high." *Biestek*, 139 S. Ct. at 1154. It demands only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

After a claimant is found to be disabled, he or she is periodically subject to evaluation to "determine if [he or she] [is] still eligible for payments based on disability." 20 C.F.R. § 416.989. The determination of a claimant's continued disability is known as "a continuing disability review" ("CDR"). *Id.* Claimants may challenge a decision that their impairments are no longer disabling. *Id.* § 416.995. To decide whether a claimant's disability continues, ALJs use an eight-step evaluation process, not unlike the evaluation used to determine disability in the first instance. *Id.* § 416.994(b)(5); *Dorgan v. Saul*, No. CV 19-919, 2021 WL 663200, at *2 (W.D. Pa. Feb. 19, 2021) (citing 20 C.F.R. § 404.1594). Pursuant thereto, an ALJ asks:

> (1) whether the claimant is performing substantially gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement in claimant's impairment(s) since the time of the most recent favorable decision that found claimant disabled; (4) whether the medical improvement relates to the ability to work; (5) whether an exception to medical improvement applies; (6) whether the claimant's impairments in combination are severe; (7) whether the claimant has retained residual functional capacity and can perform past work; and (8) whether the claimant can perform any other substantial gainful activity.

*Butler v. Kijakazi*, ___ F. Supp. 3d ___, 2022 WL 561747, at *1 (E.D. Pa. Feb. 24, 2022) (citing 20 C.F.R. §§ 416.994(b)(5)(i)—(vii)). This evaluation requires a "full comparative analysis," *id.*

at *2—3, of the claimant's current condition and the claimant's "most recent favorable medical decision," *i.e.*, the "latest decision involving a consideration of the medical evidence and the issue of whether [the claimant] w[as] disabled or continued to be disabled which became final." 20 C.F.R. § 416.994(b)(1)(vii). This is known as the "comparison point decision" ("CPD"). *Bertsch v. Berryhill*, No. CV 17-286-E, 2019 WL 1368567, at *2 (W.D. Pa. Mar. 25, 2019).

### III. The ALJ's Decision

In this matter the ALJ found that at the time of Plaintiff's 2012 CPD her medically determinable impairments included: schizophrenia, anxiety, bipolar disorder with psychotic features, borderline personality disorder, and osteoarthritis/multiple sclerosis. (R. 17). At that time, Plaintiff's mental impairments were found to meet Listing 12.03; therefore, she was determined to be disabled. (*Id.*). As of the 2016 CDR, the ALJ found that Plaintiff's severe, medically determinable impairments included: generalized anxiety disorder, multiple sclerosis, lumbar degenerative disc disease, cervical degenerative disc disease, diabetes mellitus, morbid obesity, left knee osteoarthritis, severe hepatic steatosis, and hernia. (*Id.*). As is evident from that finding, the ALJ determined that, at the time of the CDR, Plaintiff's medically determinable impairments no longer included schizophrenia, bipolar disorder with psychotic features, or borderline personality disorder. (R. 18). The ALJ further found that, since August 2016, Plaintiff had no impairment or combination of impairments that met or equaled criteria for a listed impairment. (*Id.*).

Next, the ALJ found medical improvement had occurred in August 2016 and that Plaintiff's medical improvement was "related to the ability to work" because Plaintiff's CPD impairments no longer met or equaled the criteria for the listing they met in 2012. (R. 20). The ALJ next formulated Plaintiff's RFC since August 2016 and found that it and Plaintiff's

4

vocational characteristics would permit adjustment to jobs that existed in adequate number nationally. (R. 22, 32).[2] Based on these findings, the ALJ determined that Plaintiff's disability had ended in August 2016 and that she had not become disabled again since that time. (R. 33).

IV.     **Legal Analysis**

Plaintiff has argued that the ALJ's decision is undermined by at least four errors. First, Plaintiff argues that the regulations demand that a claimant's CPD file must be made part of the record before a CDR decision can be made. She next argues that "inaudible" notations in the transcript of Plaintiff's most recent hearing are too numerous to permit meaningful review of this essential component of the record. Plaintiff further argues that the ALJ erred in her consideration of her mental health impairments because it was absurd for the ALJ to find that, though Plaintiff had a listings-level impairment in 2012 due to schizophrenia/bipolar disorder with psychotic features/borderline personality disorder, the evidence of record for the 2016 CDR did not support finding any of those impairments were medically determinable. Finally, Plaintiff argues that the ALJ failed to adequately develop the record by not ordering mental and physical consultative examinations on remand. Having considered these arguments, the Court finds the first compelling.[3] The absence of CPD evidence in the record, and the lack of significant discussion thereof in the ALJ's decision, shows this was not an adequately comparative decision.

---

[2]     Plaintiff could not return to past work because she had no past relevant work. (R. 31).

[3]     Plaintiff's argument about the transcript is uncompelling and, having found remand to be the appropriate outcome, the Court will not reach Plaintiff's arguments about the ALJ's evaluation of her 2016 mental impairments or whether the record was adequately developed. Though "inaudible" notations are scattered throughout the hearing transcript, they do not appear so frequently as to obscure the Court's understanding of Plaintiff's testimony. For instance, Plaintiff testified about taking care of her dog that she "got a little southern [INAUDIBLE] beagle, and I walk her around the driveway in the front yard." (R. 106). The Court has no reason to believe that the inaudible component of that and similar testimony rendered Plaintiff's record "so inadequate as to constitute a violation of Plaintiff's due process rights." *Swanson v.*

As explained *supra*, "[w]hen the SSA finds that a disability benefits recipient no longer has the physical or mental impairment to render him [or her] disabled, the SSA may determine that the recipient is no longer entitled to disability benefits." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012) (citing 42 U.S.C. § 423(f)). For a cessation of benefits, there must be substantial evidence of "'medical improvement' such that the recipient is 'able to engage in substantial gainful activity.'" *Id.* (citation omitted). The crux of this medical-improvement analysis is a "compari[son of] the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment." *Id.* (citing 20 C.F.R. § 404.1594(b)(7), (c)(1)). Accordingly, "when an ALJ fails to compare medical records between a claimant's current impairments and the records used . . . to make an initial disability determination, courts routinely remand the issue back [to] the Commissioner so they can make an adequate comparison." *Bryan S., v. Kijakazi, Acting Comm'r of Soc. Sec.*, No. 3:20-CV-11145, 2022 WL 2916072, at *6 (D.N.J. July 25, 2022) (citing *Chmarney v. Kijakazi*, No. 4:20-CV-1268, 2022 WL 675800, at *6 (M.D. Pa. Mar. 7, 2022)).

---

*Comm'r of Soc. Sec.*, No. 1:15-CV-08894-NLH, 2017 WL 825199, at *5 (D.N.J. Mar. 2, 2017) (citing *Williams v. Barnhart*, 289 F.3d 556, 557—58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record.")).

  Regarding the question of whether the ALJ's finding, that Plaintiff no longer had medically determinable impairments of schizophrenia/bipolar disorder with psychotic features/borderline personality disorder in 2016, was supported by substantial evidence, the Court does not reach that issue. Nor does the Court take a position as to whether the ALJ ought to have ordered consultative examinations. As explained herein, the reason for remand in this matter is that—due to the absence of CPD evidence in the record or significant discussion thereof—the ALJ's analysis reads more like a *de novo* determination of Plaintiff's impairments and limitations than a comparison of Plaintiff's disability in 2012 and her condition in 2016. Arguments about the evidence of Plaintiff's medically determinable impairments in 2016, or about the necessity of collecting additional evidence, may be addressed on remand.

If there is to be an adequate comparison in an ALJ's determination of medical improvement, there must be evidence in the record pertaining to a claimant's CPD. The regulations indicate that this is the expectation in CDR cases: "If you are entitled to benefits because you are disabled, we will have your case file with the supporting medical evidence previously used to establish or continue your entitlement." 20 C.F.R. § 416.993(a). The regulations also prescribe a procedure for cases wherein a claimant's prior file has been lost. If the prior file cannot be located, then an ALJ will nevertheless "determine whether [the claimant is] able to now engage in substantial gainful activity based on all [his or her] current impairments." *Id.* § 416.994(b)(2)(iv)(E). However, if the claimant is found to be able to do substantial gainful activity, medical improvement will not be found unless "relevant parts of the prior record" are "reconstructed." *Id.*

In this case, the only evidence in the record from Plaintiff's CPD or that significantly relates to Plaintiff's CPD is: the one-page SSI Disability Determination Transmittal (R. 120); the August 4, 2016 Disability Determination Explanation (R. 147—65); the 2019 ALJ Hearing Decision (R. 168—91); the 2019 Appeals Council Order remanding (R. 192—95); the February 28, 2012 Notice of Award (R. 196—213); the August 4, 2016 Notice of Cessation (R. 214—17); a Summary of Evidence (R. 222); and Plaintiff's 2011 Application for SSI (R. 502—08). In the 2016 Notice of Cessation, the Court has a glimpse into the evidence that was used "to decide that [Plaintiff was] disabled" in 2012. (R. 214). Therein is a list that notes six responses from various medical offices and a consultative examination all from 2011, except that the consultative examination report was received by the SSA on January 18, 2012. (*Id.*). The Summary of Evidence at R. 222 purports to list evidence relevant to the CPD, however, many of the records on that list—at least nineteen out of twenty-one—post-date the CPD with a date of

June 12, 2012 or later. (*Id.*).[4] As is apparent from the Court's review of this evidence, it does not appear that all relevant parts of Plaintiff's CPD file were in evidence for the CDR.

The record lacking such evidence, it is unsurprising that the ALJ's decision lacks adequate discussion of the CPD and its supporting evidence. The ALJ acknowledged that the CPD was the 2012 decision wherein Plaintiff was determined to be disabled because her mental impairments were found to meet the listings criteria for Listing 12.03. (R. 17). In 2012, "listing 12.03 was titled 'Schizophrenic, paranoid and other psychotic disorders.'" (R. 20). The ALJ briefly explained that though Plaintiff's severe, medically determinable impairments had included schizophrenia, bipolar disorder with psychotic features, and borderline personality disorder at the time of the CPD, there had been "no mention of any ongoing symptoms from those conditions" nor diagnosis of them "by any medical source, let alone an acceptable medical source" since August 2016. (R. 17—18). Therefore, she found those impairments were no longer "medically determinable as of August 2016." (R. 18).

In this analysis, the ALJ focused on the lack of evidence showing that Plaintiff continued to suffer from schizophrenia, bipolar disorder with psychotic features, or borderline personality disorder in August 2016 without inquiry into the evidence that had led to Plaintiff's disability determination based on those impairments in 2012. (R. 18). After finding Plaintiff had no impairment(s) that met or equaled a listing in 2016, the ALJ moved onto the next step of the

---

[4] The Court notes that Plaintiff's DIB and child's insurance benefits applications were denied in 2013, so this summary of the evidence could pertain to that decision. However, that decision is not the CPD. The appropriate point of comparison for a CDR is the most recent *favorable* determination of disability. 20 C.F.R. § 416.994(b)(1)(vii) ("For purpose of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time."). Plaintiff's 2013 decision was *unfavorable*. (R. 121).

8

eight-step CDR inquiry and sought to determine whether medical improvement had occurred. (R. 20). Here the ALJ again noted that Plaintiff's 2012 disability determination was based on a finding that her impairments had met the criteria for Listing 12.03, but she did not discuss what evidence supported that determination at the time. (*Id.*). Instead, she briefly restated the criteria that must have been met for that determination to have been made: "This listing was met when the requirements in both sections A and B of the listing were satisfied or when the requirements in section C of the listing were satisfied." (*Id.*). She then immediately turned her attention to what the evidence showed in 2016 and found that, at that time, Plaintiff had no evidence of persistent delusions, hallucinations, or the like for the "A" criteria of the listing, nor could she satisfy the "B" or "C" criteria as of August 2016. (R. 21—22). Having thus found medical improvement that was necessarily related to work ability, 20 C.F.R. § 416.994(b)(2)(iv)(A), the ALJ moved on to formulate Plaintiff's RFC since August 2016 and found her to be capable of performing a significant number of jobs in the national economy. (R. 22, 32—33).

While the ALJ clearly acknowledged the CPD therein, her analysis could not be accurately described as comparative. And though the ALJ's review of the evidence toward the 2016 RFC determination was commendably thorough, the Court finds that the decision overall is inadequate in its engagement of the CPD and related evidence.[5] There is no "compar[ison of] the evidence supporting the . . . CPD with the current medical record," nor did the ALJ identify

---

[5] Even when the ALJ cited the limited evidence of record that touched on Plaintiff's CPD, she focused on Plaintiff's condition in 2016 instead of how that evidence might show improvement by comparison of Plaintiff's impairments/limitations in 2012 and 2016. For instance, in the 2016 Disability Determination Explanation (R. 147—65), a State agency psychologist discussed evidence that led to the 2012 finding of disability. (R. 156 ("CPD: MDI: Affective D/O with Psychotic SX.")). However, when the ALJ discussed this exhibit, she focused on the State agency psychologist's findings about Plaintiff's condition in 2016 without engaging the psychologist's assessment of the evidence that informed the CPD. (R. 25).

"specific evidence upon which the CPD relied." *Bryan S.*, 2022 WL 2916072, at *6. Because of that, "[t]he ALJ's decision read less like a finding of medical improvement, and more like a finding of no disability in the first instance." *Id.* As the courts have explained, the comparative aspect of CDR determinations serves an important function as it "protects claimants from arbitrary termination of their disability benefits resulting from *de novo* determinations." *Butler*, 2022 WL 561747, at *3 (explaining that ALJs must "conduct a full comparative analysis of all evidence, including that which was used in the prior decision"). While it may have been expedient for the ALJ to—essentially—assume evidence of listing-level difficulty at the time of the CPD, and to immediately focus on whether later evidence continued to show such difficulty, that maneuver detracted from the protective function that a comparative analysis is meant to serve. Additionally, to the extent that Defendant argues the ALJ "merely had to examine" the CPD and related evidence without exhibiting the evidence that informed her analysis, the Court disagrees. *Chmarney*, 2022 WL 675800, at *7 n.5. This Court has no way to review a finding of medical improvement for substantial evidence if the ALJ's finding of such improvement is based on evidence that is not made part of the record.[6]

## V.    Conclusion

Based on the foregoing, the Court has determined that the ALJ's decision lacks adequate analysis of medical improvement with comparison of evidence relevant to the CPD and evidence available at the time of Plaintiff's CDR. The Court in no way suggests that remand will necessarily lead to a different outcome. *Bryan S.*, 2022 WL 2916072, at *8. But there must be a

---

[6]    Nor will the Court affirm the underlying decision because Plaintiff's counsel at the hearing failed to challenge the completeness of the record. The regulations direct that the ALJ's determination of medical improvement must be a comparative analysis. And the regulations specifically direct that a finding of medical improvement cannot be found unless the prior file can be located, or its relevant parts reconstructed. 20 C.F.R. § 416.994(b)(2)(iv)(E).

"more focused analysis as to the severity of Plaintiff's medical impairments in 2016 in comparison to the severity of those impairments as of the CPD in 2012." *Dorgan*, 2021 WL 663200, at *5.  Accordingly, the Court remands this matter to the Acting Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch  
United States District Judge

ecf:    Counsel of Record